IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FUNAI ELECTRIC COMPANY, LTD., | No. C 04-01830 CRB |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| DAEWOO ELECTRONICS CORPORATION ET AL, | |
| Defendant. / | |

Now pending before the Court are (1) motions by Defendants Daewoo Electronics Corp. et al. (collectively "Daewoo") for summary judgment on the issues of noninfringement, invalidity, and inequitable conduct in the procurement of U.S. Patent No. 6,021,018 ("the '018 patent"); and (2) cross-motions by Plaintiff Funai Electric Company, Ltd. ("Funai") for summary judgment on the issues of literal infringement and lack of inequitable conduct.

**I.  BACKGROUND**

This action between Daewoo and Funai involves six United States patents, one of which, U.S. Patent No. 6,012,018, which was issued to Funai and is entitled "Loading Mechanism For a Video Cassette," is the subject of the cross-motions now before the Court. Funai asserts infringement by Daewoo of all four claims of the '018 patent.

The '018 patent discloses a mechanical subsystem for a VCR that performs loading and eject operations--that is, the subsystem opens and closes the door of a VCR, and moves

the unit's cassette holder to and from the operating position. In particular, the patent teaches that the cassette holder may rise vertically through the area swept by the door, so long as the distinct motions of the door and the cassette holder do not interfere with one another.

Because the cassette holder moves vertically into and out of the area swept by the door, the cassette does not need to move as far back into the unit as would otherwise be required for it to play. Mechanisms known in the prior art first moved the cassette holder toward the back of the unit until it cleared the area swept by the door, and then moved it downward into the play position. Under the '018 patent, the cassette holder moves into the unit but begins its downward motion into the play position before clearing the door. During the eject sequence, the reverse operation requires that the door begin to open before the cassette moves upwards.

One purpose of the invention is to reduce the depth of a video cassette deck, and therefore the overall size of a VCR unit. Funai asserts that this change reduces manufacturing costs (less material) and shipping costs (smaller size, less weight), and appeals to consumer preferences for smaller units.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the non-moving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

1  A party moving for summary judgment that does not have the ultimate burden of persuasion
2  at trial has the initial burden of either producing evidence that negates an essential element of
3  the non-moving party's claims or showing that the non-moving party does not have enough
4  evidence of an essential element to carry its ultimate burden of persuasion at trial.  See
5  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  Where the
6  party moving for summary judgment would bear the burden of proof at trial, it bears the
7  initial burden of producing evidence which would entitle it to a directed verdict if the
8  evidence went uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests.,
9  Inc., 213 F.3d 474, 480 (9th Cir. 2000).

10       If the moving party does not satisfy its initial burden, the non-moving party has no
11  obligation to produce anything and summary judgment must be denied.  If, however, the
12  moving party satisfies its initial burden of production, then the non-moving party may not
13  rest upon mere allegations, or denials of the adverse party's evidence, but instead must
14  produce admissible evidence to show there exists a genuine issue of material fact.  See
15  Nissan Fire, 210 F.3d at 1102.  Summary judgment is appropriate in a patent case, as in any
16  other case, where there is no genuine issue of material fact and the movant is entitled to
17  judgment as a matter of law.  Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 646
18  (Fed. Cir. 1994) (citations omitted).

19       To invalidate a patent, a moving party must overcome the presumption of validity that
20  inheres in any patent by clear and convincing evidence.  35 U.S.C. § 282; United States
21  Gypsum Co. v. Nat'l Gypsum Co., 74 F.3d 1209, 1212 (Fed. Cir. 1996).  Obviousness is a
22  legal question where the relevant underlying facts are not in dispute.  Iron Grip Barbell Co. v.
23  USA Sports, Inc., 392 F.3d 1317, 1323 (Fed. Cir. 2004).  Determination of infringement is
24  normally a fact-intensive issue, but comparison of a properly interpreted claim with a
25  stipulated or uncontested description of an accused process would reflect such an absence of
26  material fact as to warrant summary judgment of infringement or noninfringement.  Norian
27  Corp. v. Stryker Corp., 433 F. Supp. 2d 1051, 1053 (N.D. Cal. 2004) (citing D.M.I. Inc. v.
28  Deere & Co., 755 F.2d 1570, 1573 (Fed. Cir. 1985)).

3

## III. DISCUSSION

### A. Inequitable Conduct

Prior to Funai's filing of an application in the United States that eventually issued as the '018 patent, the Japanese Patent Office ("JPO") issued a search report and evaluation on the patentability of the Japanese application to which priority is claimed by Funai. See Casto Decl. in Supp. of Pl's Reply, Exh. 4 (Utility Model Technical Evaluation). The JPO's evaluation concluded that the invention might lack novelty and inventiveness over the prior art. Id. at 4. The JPO cited the disclosures of Japanese Patent Publication Nos. H05-314606 and H06-243561 (the "606-J" and "561-J" patents, respectively) as the basis for defeating patentability.

Funai then timely filed an Information Disclosure Statement ("IDS") in connection with the '018 patent prosecution and listed both the 606-J and 561-J patents on the IDS form. Funai also submitted copies of the Japanese publications and English-language abstracts to the United States Patent Office ("USPTO"), although the abstract of the 606-J patent did not refer to the portion of the full disclosure that is relevant to patentability of the '018 patent. Finally, Funai submitted the JPO evaluation as well, but rather than listing it in the IDS form, referred to the opinion in a post-script note on the cover letter of the filing. This post-script note appears not in a footnote, but just below the signature line, in the same font as the text in the body. See Casto Decl. in Support of Plaintiff's Reply, Exh. 5 at 3.

### 1. The Cross-Motions

Daewoo now moves for a judgment that the '018 patent is unenforceable for inequitable conduct. Specifically, Daewoo asserts that Funai did not disclose to the USPTO examiner (i) the substance of an evaluation issued by the Japan Patent Office rejecting the Japanese counterpart application and (ii) the relevant content of one of the prior art references upon which that rejection was based. In support of this assertion Daewoo refers to the omitted passage of the 606-J patent, which it alleges was material and should have been disclosed. Funai cross-moves for partial summary judgment on lack of inequitable conduct,

4

noting that it properly submitted to the examiner all the relevant information alleged to have been withheld.

### 2. Analysis

To prevail on a claim of inequitable conduct, Daewoo must prove by clear and convincing evidence that the applicant withheld or misrepresented information material to the determination of patentability, and that it did so with intent to deceive the patent office. See Purdue Pharma L.P. v. Endo Pharm., Inc., 438 F.3d 1123, 1128-29 (Fed. Cir. 2006). Moreover, even if materiality and intent are found, as a threshold matter, a court must thereafter weigh these two factors to determine if "the equities warrant a conclusion that inequitable conduct occurred." Id. at 1128 (citing Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995)).

Daewoo contends that, by failing to disclose relevant information about the JPO evaluation, Funai violated 37 C.F.R. §§ 1.98 and 1.56, which govern the content of information disclosure statements and codify the duty to disclose information material to patentability, respectively. The record in this case, however, reveals neither a material omission or misrepresentation, nor an intent to mislead on the part of Funai in prosecuting the '018 patent. Indeed, the IDS submitted by Funai included the two Japanese patent applications cited in the JPO evaluation. Moreover, Funai submitted the JPO evaluation in both its original Japanese and a full English translation. Although the English-language abstracts of the Japanese patents did not fully disclose all aspects of the application, including the portion most relevant for the examination, those passages were cited in the JPO evaluation. Finally, the portion of the 606-J patent that Daewoo alleges to be absent from Funai's submissions to the USPTO, and that would constitute the primary support for a threshold showing of a material omission or misrepresentation, was quoted in the JPO evaluation.

Daewoo contends that although the relevant portion may have been disclosed, the disclosure was made in a "knowingly misleading" manner such that the Examiner overlooked the significance of the reference. The record does not support this argument. In fact, the

5

1 Examiner acknowledged the IDS submissions in the subsequent Office Action; the
2 evaluation by the JPO, in both Japanese and English, was entered in the prosecution file
3 history; and the two Japanese patents were considered, as evidenced by their listing on the
4 front face of the '018 patent.

5       The Court concludes that Funai complied with the disclosure requirements of the
6 USPTO, and all available evidence in the intrinsic record demonstrates that the information
7 was considered by the Examiner. Therefore, the Court holds that the evidence submitted by
8 Daewoo does not amount to a threshold showing of materiality or intent to deceive the patent
9 office. As a matter of law, Funai is entitled to a judgment that there was no inequitable
10 conduct in its procurement of the '018 patent, at least with respect to the references cited by
11 the JPO. Daewoo's motion for partial summary judgment of unenforceability due to
12 inequitable conduct is therefore DENIED, and Funai's cross-motion for lack of inequitable
13 conduct is hereby GRANTED.

### B. Invalidity

15       For purposes of the following discussion, the Court hereby incorporates the statements
16 of law set forth in the Claim Construction Order, issued March 1, 2006. In brief, Claim 1 of
17 the '018 patent, an apparatus claim, requires (1) a door covering a port, (2) a cassette holder
18 that holds and transports a video cassette, (3) a slide arm, (4) a holder drive gear controlled
19 by the slide arm that moves the cassette holder, and (5) a door arm also controlled by the
20 slide arm that initiates the automated movements of the door.[1] The motions of the door and

---

[1] A loading mechanism for loading a video cassette into a play position in a video cassette deck comprising:

    a door having an opening for receiving said video cassette;

    a cassette holder, for holding said video cassette at an initial position, and for moving said video cassette between said initial position and a play position while holding said video cassette;

    a slide arm capable of sliding in parallel to an insertion direction of said video cassette;

    a holder drive gear for driving said cassette holder via a gear mechanism so said cassette holder is positioned in the initial position when said slide arm is positioned at a first position, and is positioned in said play position when said slide arm is positioned at a

6

1 the cassette holder are coordinated so that the holder moves vertically within the area swept
2 by the door but without interfering with the motion of the door.  The Court previously
3 construed the term "opened" to mean "moved from a closed position such that the door has
4 cleared the cassette so that ejecting the cassette will not interfere with the door."  Claim
5 Construction Order, Mar. 1, 2006, at 7.

### 1. The Motion

Daewoo moves for a summary judgment of invalidity as to the '018 patent, arguing that the patent is obvious in light of the 561-J patent, in combination with either the 606-J patent or Japanese patent H07-72967 (the "967-J patent").  The parties do not dispute that the effective dates of these references make them eligible as prior art.  Daewoo contends that all the elements of the claims of the '018 patent are present in the prior art, and one of skill in the art would be motivated to combine the references because the references involve the same problems and issues.  Funai counters that the Examiner is presumed to have already considered the combination of the 561-J and 606-J patents and found the claimed invention nonobvious.  Furthermore, Funai states there is no motivation to combine the references because the underlying mechanisms are different enough to preclude such motivation, and because the secondary factors of commercial success and copying weigh in its favor.

### 2. Analysis

Under 35 U.S.C. § 103(a), a claimed invention is not patentable if the differences between it and the prior art are such that the subject matter as a whole would have been obvious at the time of the invention to a person of ordinary skill in the art.  See Graham v. John Deere Co., 383 U.S. 1, 13-14 (1966).  To assess the question of obviousness, the Court considers first the scope and content of the prior art.  Id. at 17.  Here, the asserted prior art

---

second position; and

a door arm for driving said door in accordance with movement of said slide arm, so that when said slide arm slides from said second position toward said first position, said door arm opens said door while said slide arm slides from the first position towards a third position which is arranged between said first and second positions, and said holder drive gear starts to drive said cassette holder from said play position towards said initial position after said slide arm passes said third position so that said door is opened before said cassette holder is moved when said cassette holder is moved to said initial position.

7

references all relate to mechanical subsystems of a VCR that convey cassette tapes between a loading or unloading position and a play position. In addition, these references all relate to the coordinated motion of the door on a VCR. Beyond this commonality, however, the details of the various disclosures do not suggest the particular combinations or relationships found in the '018 patent. See DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co., 464 F.3d 1356, 1360 (Fed. Cir. 2006) (noting that, where the claim limitations are found in more than one reference, the factfinder must determine "[w]hat the prior art teaches, whether it teaches away from the claimed invention, and whether it motivates a combination of teachings from different references" (citation omitted)).

The 561-J patent discloses that placing a door locking mechanism onto the cassette holder, such that it interlocks with the door lever arm upon vertical descent of the holder, requires fewer parts and thereby allows for a smaller product. But the 561-J also teaches that the door is prompted to open and close by the vertical ascent and descent of the cassette holder, and that the motions of the cassette and the door therefore must occur simultaneously. As a result, the path of vertical motion under the 561-J patent must be beyond the sweep of the door. This disclosure does not allow for any reduction in depth of the unit, as the disclosures of the '018 patent allow. Also, the 561-J patent employs a slide arm, which it referrs to as a rack gear [18], to transfer power from the motor to a gear relay mechanism. That gear mechanism then drives a holder drive gear, which is referred to as a pressure arm [15], and also drives the guide shaft [14], which in turn rotates a cam [22] to move the door arm [23]. See 561-J patent at para. 14-18. These disclosures are dissimilar from the mechanism disclosed by the '018 patent.

Daewoo suggests that the 606-J and 967-J patents both teach that opening the door prior to the ascent of the cassette holder during the eject sequence permits the deck to be less deep. These patents, however, use a gear relay mechanism to actuate the moving parts, not a slide arm. Because none of the references individually teach the claimed invention, their combination--through the 606-J or 967-J for the timing of events, and the 561-J for the slide arm mechanism-- is necessary to invalidate the '018 patent.

8

1  The 561-J patent does not teach a mechanism in which the motion of the door can
2  precede the vertical motion of the cassette in the eject sequence.  In fact, for the purposes of
3  the 561-J patent, the descent of the holder must coincide with the door being finally closed.
4  And conversely, in the eject sequence, the start of the ascent of the holder marks the time
5  point at which the door may begin to open.  This teaches directly away from the claimed
6  elements of the '018 patent.  Applying the idea of the 606-J or 967-J patents to open the door
7  before raising the cassette holder during an eject sequence is directly contrary to the teaching
8  of the 561-J patent.  Accordingly, the teachings of these patents do not suggest their
9  combination.

10  Nor does the 561-J patent teach that the slide arm does anything more than interact
11  with an assembly of gears, resulting in the simultaneous motion of a holder drive gear and a
12  door arm.  The slide arm (rack gear) of the 561-J patent does not perform the claimed
13  functions of the '018 patent.  The slide arm of the '018 patent operates to move the holder
14  drive gear and the door arm independently of one another.  This slide arm does not simply
15  transmit power; rather, by its design, it directs the coordinated motion of the door and the
16  holder. The claimed element of a slide arm for separately actuating a holder drive gear and a
17  door arm is absent from the teachings of the 561-J patent.

18  In sum, the references fail to make a prima facie case of obviousness because the all
19  elements of claim 1 of the '018 patent are not found in the prior art.  Also, the combination of
20  either the 606-J or the 967-J patents with the 561-J patent would render the 561-J patent
21  inoperative for its intended purpose.  See McGinley v. Franklin Sports, Inc., 262 F.3d 1339,
22  1354 (Fed. Cir. 2001) (noting that a prima facie case of obviousness does not exist if
23  combining references would produce a seemingly inoperative device).

24  For these reasons, the asserted combinations cannot render the claim obvious.  Here,
25  Daewoo can do no more than simply identify the claimed elements in the prior art, which is
26  insufficient.  See Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1575 (Fed. Cir. 1987)
27  (noting that it is not permissible under the law to base a finding of obviousness on the
28  combination of similar elements in separate prior patents, since such an apporach would

9

necessarily destroy virtually all patents); see also In re Rouffet, 149 F.3d 1350, 1357 (Fed. Cir. 1998) (noting that it is impermissible to use the claimed invention itself as a blueprint for piecing together elements in the prior art). Because the Court concludes that independent claim 1 is not obvious, it follows that claims 2-4, which contain additional limitations, are also not obvious. See In re Baker Hughes, Inc., 215 F.3d 1297, 1303 (Fed. Cir. 2000). Because Daewoo has not met its burden of proving by clear and convincing evidence that the patent should be invalidated for obviousness, the Court DENIES Daewoo's motion for partial summary judgment of invalidity.

### C. Infringement

Funai's '018 patent claims a mechanism for shuttling video cassettes inside a video cassette deck between the "initial" position and the "play" position. As noted above, Claim 1, the sole independent claim, requires the elements of (1) a door, (2) a cassette holder, (3) a slide arm, (4) a holder gear drive, and (5) a door arm, and further interrelates the functions and structural connections among these elements. Dependent claim 2 requires a cam mechanism on the slide arm for driving the door arm. Claims 3 and 4 add to claims 1 and 2, respectively, the additional limitation that the rack portion of the slide arm is disengaged from the pinion portion of the holder drive gear at certain times.

Funai accuses Daewoo of infringing these claims by producing and selling VCR decks with what is called the "T-Mecha" loading mechanism. Daewoo's Mot. at 3. The T-Mecha mechanism includes a door, a cassette holder, a slide arm, a holder gear drive and a door arm. The T-Mecha assembly loads a tape as follows: once a tape is placed in the cassette holder, the slide arm drives the holder drive gear to move the holder to the "intermediate" position; as the slide arm continues to move, a cam on the arm then presses a pin on the holder to force it down approximately 2 mm from the "intermediate" position to the "play" position. The eject sequence follows the reverse course: the slide arm moves in the opposite direction, releasing the pin on the holder from under the cam, thereby allowing the holder to rise approximately 2 mm into the "intermediate" position. At the same time the cam surface on the slide arm causes the door arm to move and begin opening the door. Finally, the slide arm

gear rack engages the holder drive gear, propelling the holder from the "intermediate" position to the "initial" position.

The difference between the intermediate position and the play position results from the tension in the springs acting on the two tape reels in the cassette. The holder drive gear moves the holder to bring the tape into contact with the play mechanism, but the springs' tension prevents the tape from entering securely into place. A cam on the slide arm completes the loading process, and at this point the holder drive gear is no longer engaged. The cam overcomes the lifting force of the springs to press the holder and the tape securely into the play mechanism. The eject function performs these events in reverse.

### 1. The Cross-Motions

Defendant Daewoo moves for partial summary judgment of noninfringement on the basis that one of the claimed elements of the '018 patent is not found in its accused products. Daewoo contends there is no literal infringement because its cassette holder moves in two steps--that is, via an "intermediate" position, and not directly between the play and initial positions as required by the claims, and that the holder moves before the door is opened, the reverse of the order in the claims. Daewoo also contends that the doctrine of equivalents is barred by prosecution history estoppel. Plaintiff Funai cross-moves for summary judgment on the issue of literal infringement only. Funai refutes the importance of the difference between the two-step movement in the accused products and the claim limitations and asserts that the timing of the door opening was already conceded by Daewoo.

### 2. Analysis

*a. Literal Infringement.* Funai first argues for direct infringement on the basis that Daewoo's "intermediate" position, located approximately 2 mm above the admitted "play" position, also should be recognized to be the "play" position. That is, Funai contends that both locations are the "play" position for the purposes of the patent, notwithstanding the 2 mm difference in position. Funai demonstrated to the Court that a T-Mecha VCR deck is still capable of playing a tape even if it has been modified by removing the cam that forces the final motion from the "intermediate" position to the "play" position. Funai also points to

the patent specification, which refers to the "play" position as the "running" position, which in turn is defined as the position "where the cassette receiving portion is located in the case where reproducing, recording, etc. are performed on the video cassette tape." '018 patent at 3:26-29.  Funai contends that even the so-called "intermediate" position satisfies this definition, and thus falls within the term "play" or "running" position because a T-Mecha VCR can play at that position.

The Court disagrees.  Even though the Daewoo VCR may have the capacity to play a cassette when the tape in the "intermediate" position, the patent claims the position where the holder "is located," and where the tape functions "are performed," not where they might be located or could be performed.  In practice, the Daewoo VCR decks operate differently than the '018 patent literally specifies; though they are small, such differences in locations can be significant, especially for mechanical devices such as VCRs.  Most important, though, there is a final movement in the Daewoo VCR that does not exist under the '018 patent, a movement that is initiated by an additional cam structure.  Thus, the "intermediate" and "play" positions in the Daewoo VCR do not exist by happenstance, nor could a tape sometimes adopt one or the other position.  The difference in position follows from the engineered design.  The "intermediate" and "play" positions in the accused products are distinct, and the Court concludes that the "play" position of the claims therefore does not read on the "intermediate" position of the T-Mecha products.

Funai further argues that even under Daewoo's construction of "play" position, the products still literally infringe.  Daewoo counters that the T-Mecha assembly does not meet the following limitations of claim 1:

> said holder drive gear starts to drive said cassette holder from said play position towards said initial position after said slide arm passes said third position so that said door is opened before said cassette holder is moved when said cassette holder is moved to said initial position.

Daewoo states first that the holder drive gear does cause the holder to move from said play position; it is the slide arm cam's release of the pin that moves the holder from the play position; and second, the door is not opened before said cassette holder is moved, because the release from the play to the intermediate position occurs before the door is moved.

12

Funai correctly argues that the T-Mecha device meets the second disputed limitation. Daewoo's reasoning that "the door is not 'opened' before the cassette holder is moved" misreads the claim. The limitation simply requires that the door be "opened"--that is, that it begins to open--before the holder moves towards the initial position. See Claim Construction Order at 7. The accused products, in which the motion occurs in two steps, fulfill this limitation. It does not matter that the door does not move before the holder shifts from the play position to the intermediate position. The critical point, not disputed by the parties, is that when the holder is moved towards the initial position from the intermediate position, the door has already begun its opening motion. It bears repeating that the door does not need to have completely opened by this point, it only needs to have started to open. See id.

The Court agrees with Daewoo, however, about the first disputed limitation. Funai contends that the claim does not require the holder drive gear to be the "exclusive" means driving the holder. While this is an accurate reading, it overlooks that fact that the gear is said to be the means for moving the holder from the play position. This does not describe the T-Mecha operation. Accordingly, the claims do not literally read on the accused devices.

*b. Doctrine of Equivalents.* Daewoo also raised arguments against infringement by the doctrine of equivalents in its motion. In particular, Daewoo contends that prosecution history estoppel applies to bar Funai from asserting infringement by equivalents. In particular, Daewoo notes that an additional limitation--"so that said door is opened before said cassette holder is moved when said cassette holder is moved to said initial position"-- was added by Examiner's amendment in order to overcome a rejection under Section 102. Daewoo contends that this amendment estops Funai from reaching equivalents that vary, or, especially, reverse the operational timing the door's opening. Daewoo contends that the door must move prior to the movement of the holder towards the initial position, as the claim reads.

As noted above, however, the Court finds that the T-Mecha literally infringes this limitation, thus the doctrine of equivalents need not be invoked on this point. The question

instead, is whether the T-Mecha's operations are substantially different from the sole claim limitation not literally present: "said holder drive gear starts to drive said cassette holder from said play position towards said initial position after said slide arm passes said third position."  As to this question, however, Funai has not moved for summary judgment.  Funai has cross-moved only for literal infringement, explicitly reserving the right to advance an argument about infringement by equivalents at a later stage in this litigation.  While the Court may enjoy authority to rule on the issue in light of the parties' tangential briefing on the subject, cf. Int'l Visual Corp. v. Crown Metal Mfg. Co., 991 F.2d 768, 770 (Fed. Cir. 1993); Massey v. Del Laboratories, Inc., 118 F.3d 1568, 1572 (Fed. Cir. 1997), the Court declines to reach that question now.

Thus, the Court hereby DENIES Daewoo's motion for partial summary judgment of noninfringement, and DENIES Funai's motion for partial summary judgment of literal infringement.

**IT IS SO ORDERED.**

Dated: December 20, 2006

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE