**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7
8    FUNAI ELECTRIC COMPANY,                    No. C-04-1830 JCS
9            Plaintiff,
10       v.
11   DAEWOO ELECTRONICS CORP., ET AL.,
12           Defendants.
13   _____/
14
15                    **FINAL JURY INSTRUCTIONS**
16
17
18       DATED: February 4, 2008
19
20                                    _____
                                      JOSEPH C. SPERO
21                                    United States Magistrate Judge
22
23
24
25
26
27
28

**JURY INSTRUCTION NO.  1**

**DUTY OF JURY**

Members of the Jury.   Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 2**

**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

United States District Court

For the Northern District of California

2

**JURY INSTRUCTION NO. 3**

**BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.  You should base your decision on all of the evidence, regardless of which party presented it.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 4**

**TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS**

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 5**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      The sworn testimony of any witness;

2.      The exhibits which are received into evidence; and

3.      Any facts to which the lawyers have agreed.

**United States District Court**
For the Northern District of California

# JURY INSTRUCTION NO. 6

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.  Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

4.  Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**JURY INSTRUCTION NO. 7**

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence was admitted for a limited purpose only.  As I instructed you during the trial, you may consider that evidence only for the limited purpose I described to you during the trial.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 8**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 9**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**United States District Court**
For the Northern District of California

9

**JURY INSTRUCTION NO. 10**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.      The opportunity and ability of the witness to see or hear or know the things testified to;

2.      The witness's memory;

3.      The witness's manner while testifying;

4.      The witness's interest in the outcome of the case and any bias or prejudice;

5.      Whether other evidence contradicted the witness's testimony;

6.      The reasonableness of the witness's testimony in light of all the evidence; and

7.      Any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**JURY INSTRUCTION NO. 11**

**USE OF NOTES**

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 12**

**JURY TO BE GUIDED BY OFFICIAL ENGLISH TRANSLATION/ INTERPRETATION**

Languages other than English may be used during this trial. The evidence to be considered by you is only that provided through the official court interpreters. Although some of you may know Japanese or Korean, it is important that all jurors consider the same evidence. Therefore, you must accept the English translation. You must disregard any different meaning.

**United States District Court**
For the Northern District of California

12

**JURY INSTRUCTION NO. 13**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts that have been read to you. You should therefore treat these facts as having been proved.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 14**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.  You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.  Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**JURY INSTRUCTION NO. 15**

**USE OF INTERROGATORIES OF A PARTY**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**United States District Court**

For the Northern District of California

15

**JURY INSTRUCTION NO. 16**

**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.  Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**United States District Court**
For the Northern District of California

16

**JURY INSTRUCTION NO. 17**

**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 18**

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**JURY INSTRUCTION NO. 19**

**SUMMARY OF CONTENTIONS BY THE PARTIES**

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, Funai seeks money damages from Daewoo for allegedly infringing the '018, '210, and '538 patents by making, using, importing, selling and offering for sale products that Funai argues are covered by claims 1-4 of the '018 patent; claims 1, 2, 4-7 and 9-10 of the '210 patent; and claims 1, 3, 4 and 5 of the '538 patent. These are the asserted claims of the '018, '210, and '538 patents. The products that are alleged to infringe are video-cassette recorders ("VCRs"), video-cassette players ("VCPs") and combination products that include a VCR such as television-VCRs ("TVCRs") and digital video disk player-VCRs ("DVD-VCRs").

Daewoo denies that it has infringed the asserted claims of the patents and argues that, in addition, the asserted claims of the '210 patent and of the '538 patent are invalid.

The only remaining dispute concerning infringement of claims 1 through 4 of the '018 patent is whether the T-Mecha VCRs include an <u>equivalent</u> to the limitation "said holder drive gear starts to drive said cassette holder from said play position towards said initial position."

The only remaining dispute concerning infringement of claims 1, 2, 4 through 7, 9 and 10 of the '210 patent is whether the T-Mecha VCRs include an <u>equivalent</u> to the limitation of a bearing holder that is made of an "insulating material."

All elements of claims 1, 3, and 4 of the '538 patent are literally present in the accused products except that there is a dispute whether the limitation "a bias resistor for providing a bias voltage to said base" is present either <u>literally</u> or by <u>equivalents</u>.

All elements of claim 5 of the '538 patent are literally present in the accused products except that there is a dispute whether the limitation "a biasing means for providing a bias voltage to said base" is present either <u>literally</u> or by <u>equivalents</u>.

Your job is to decide whether the asserted claims of the '018, '210, and '538 patents have been infringed and whether any of the asserted claims of the '210 or '538 patents are invalid. If you decide that any claim of the patents has been infringed and is not invalid, you will then need to

decide any money damages to be awarded to Funai to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 20**

**INTERPRETATION OF CLAIMS**

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

As used in the '018 patent, the term "opened" means "moved from a closed position such that the door has cleared the cassette so that ejecting the cassette will not interfere with the door."

As used in the '210 patent, the term "insulating material" means "a material with poor electrical conduction that acts to suppress switching noise generated by pulse width modulation control of the direct driving motor, thereby suppressing the video screen and audio noise caused by electrical noise produced by the capstan motor."

As used in the '538 patent, the term "connected" means "physically connected to provide an electrical path between two points, either directly or through intervening electronic components."

As used in the '538 patent, the term "series circuit" means "a circuit whose components are connected end-to-end in a string."

As used in the '538 patent, the term "series junction point at least between said linear record erasing head and one of the entire-width erasing head and an inductance element" means "a point on said series circuit between (1) the linear record erasing head and the entire-width erasing head, (2) the linear record erasing head and an inductance element, or (3) the linear record erasing head and both the entire-width erasing head and an inductance element."

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 21**

**INFRINGEMENT – BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Funai has proven that Daewoo has infringed one or more of the asserted claims of the '018, '210, or '538 patents. Funai must prove infringement by a preponderance of the evidence. That is, to prove infringement of any claim, Funai must persuade you that it is more likely than not that Daewoo has infringed that claim.

**United States District Court**

For the Northern District of California

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION 22**

**DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Daewoo has made, used, sold, offered for sale or imported within the United States a product covered by a claim of the '018, '210, or '538 patents. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether Daewoo's products infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must find that its dependent claims are also not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its asserted dependent claims have also been infringed.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.

All elements of claims 1 through 4 of the '018 patent are literally present in the T-Mecha VCRs, other than the limitation: "said holder drive gear starts to drive said cassette holder from said play position towards said initial position," which is not literally present.

If the T-Mecha VCR's include an equivalent to the limitation "said holder drive gear starts to drive said cassette holder from said play position towards said initial position" then they directly infringe claims 1 through 4 of the '018 patent under the doctrine of equivalents and if the T-Mecha VCR's do not include an equivalent to this limitation then they do not directly infringe under the doctrine of equivalents.

All of the elements of claims 1, 2, 4 through 7, 9, and 10 of the '210 patent are literally present in the T-Mecha VCRs, other than the limitation of  a bearing holder that is made of an "insulating material," which is not literally present.

If the T-Mecha VCR's include an equivalent to the limitation of a bearing holder that is made of an "insulating material" then they directly infringe claims 1, 2, 4 through 7, and 9 of the '210 patent under the doctrine of equivalents and if the T-Mecha VCR's do not include an equivalent to this limitation then they do not directly infringe under the doctrine of equivalents.

All elements of claims 1, 3, and 4 of the '538 patent are literally present in the accused products except that there is a dispute whether the limitation "a bias resistor for providing a bias voltage to said base" is present either literally or by equivalents.  If the accused products include "a bias resistor for providing a bias voltage to said base" or the equivalent of "a bias resistor for providing a bias voltage to said base" then they directly infringe claims 1, 3 and 4 of the '538 patent.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 23**

**INFRINGEMENT OF THE '538 PATENT**

If you decide that the accused products infringe claim 1 of the '538 patent, then claim 5 of the '538 patent also is infringed.  If you decide that the accused products do not infringe claim 1 of the '538 patent, then claim 5 of the '538 patent also is not infringed.

**JURY INSTRUCTION 24**

**LITERAL INFRINGEMENT**

To decide whether Daewoo's product literally infringes a claim of the '538 patent, you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product. If so, Daewoo's product literally infringes that claim. If, however, Daewoo's product does not have every requirement in the patent claim, Daewoo's product does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

As I have said, a patent claim may be infringed literally or under the doctrine of equivalents. Funai only claims that one patent's claims are literally infringed by Daewoo's products: the '538 patent.

1
2

**JURY INSTRUCTION 25**

**INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

3   If you decide that a Daewoo product does not literally infringe the asserted claim of the '538

4   patent, you must then decide whether that product infringes the asserted claim of that patent under

5   what is called the "doctrine of equivalents." You must also decide whether a Daewoo product

6   infringes the asserted claims of the '018 and '210 patents under the doctrine of equivalents.

7   Under the doctrine of equivalents, the product can infringe an asserted patent claim if it

8   includes parts that are equivalent to the requirements of the claim. If the product is missing an

9   equivalent part to even one requirement of the asserted patent claim, the product cannot infringe the

10   claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of

11   equivalents, you must look at each individual requirement of the asserted patent claim and decide

12   whether the product has an equivalent part to that individual claim requirement.

13   A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary

14   skill in the field would think that the differences between the part and the requirement were not

15   substantial as of the time of the alleged infringement.

16   One way to decide whether any difference between a requirement of an asserted claim and a

17   part of the product is not substantial is to consider whether, as of the time of the alleged

18   infringement, the part of the product performed substantially the same function, in substantially the

19   same way, to achieve substantially the same result as the requirement in the patent claim.

20   In deciding whether any difference between a claim requirement and the product is not

21   substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary

22   skill in the field would have known of the interchangeability of the part with the claimed

23   requirement. The known interchangeability between the claim requirement and the part of the

24   product is not necessary to find infringement under the doctrine of equivalents. However, known

25   interchangeability may support a conclusion that the difference between the part in the product and

26   the claim requirement is not substantial. The fact that a part of the product performs the same

27   function as the claim requirement is not, by itself, sufficient to show known interchangeability.

28

1          You may not use the doctrine of equivalents to find infringement if you find that Daewoo's

2    product is the same as what was in the prior art before the application for the patent at issue, or what

3    would have been obvious to persons of ordinary skill in the field in light of what was in the prior art.

4    A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have

5    lawfully obtained from the Patent and Trademark Office.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 26**

**WILLFUL INFRINGEMENT**

In this case, Funai argues that Daewoo willfully infringed Funai's patents.

To prove willful infringement, Funai must first persuade you that Daewoo infringed a valid and enforceable claim of Funai's patent. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, Funai must persuade you that it is highly probable that prior to May 7, 2004, Daewoo acted with reckless disregard of the claims of Funai's '018, '210, or '538 patents.

To demonstrate such "reckless disregard," Funai must satisfy a two-part test. The first part of the test is objective. Funai must persuade you that Daewoo acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent. The state of mind of Daewoo is not relevant to this inquiry. You should focus on whether a reasonable person in the position of Daewoo, after learning of the patent, could have reasonably believed that it did not infringe or reasonably believed the patent was invalid or unenforceable. If a reasonable person in the position of Daewoo could not have held such belief, then you need to consider the second part of the test.

The second part of the test does depend on the state of mind of Daewoo. Funai must persuade you that Daewoo actually knew, or it was so obvious that Daewoo should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Daewoo acted with reckless disregard for Funai's patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following:

(1)     Whether Daewoo acted in a manner consistent with the standards of commerce for its industry;

(2)     Whether Daewoo had legitimate defenses to infringement claims and credible invalidity arguments, whether such defenses or arguments were ultimately successful or not;

(3)     Whether Daewoo intentionally copied a product of Funai covered by the patent; and

United States District Court

For the Northern District of California

(4)     Whether Daewoo relied on a legal opinion that was well-supported and believable and that advised Daewoo (1) that the product did not infringe Funai's patent or (2) that the patent was invalid.

**JURY INSTRUCTION NO. 27**

**INVALIDITY – BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Daewoo has proven that the asserted claims of the '210 patent and the '538 patent are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Daewoo must persuade you that it is highly probable that the claim is invalid.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION 28**

**OBVIOUSNESS**

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field who knew about all this prior art would have come up with the claimed invention.

However, a patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether Daewoo has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.  Also, you should consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.  However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

1    The ultimate conclusion of whether a claim is obvious should be based upon your

2    determination of several factual decisions.  First, you must decide the level of ordinary skill in the

3    field that someone would have had at the time the claimed invention was made.  Second, you must

4    decide the scope and content of the prior art.  Third, you must decide what difference, if any, existed

5    between the claimed invention and the prior art.  Finally, you should consider any of the following

6    factors that you find have been shown by the evidence:

7        (1)    commercial success of a product due to the merits of the claimed invention;

8        (2)    a long felt need for the solution provided by the claimed invention;

9        (3)    unsuccessful attempts by others to find the solution provided by the claimed

10    invention;

11        (4)    copying of the claimed invention by others;

12        (5)    unexpected and superior results from the claimed invention;

13        (6)    acceptance by others of the claimed invention as shown by praise from others in the

14    field or from the licensing of the claimed invention;

15        (7)    other evidence tending to show nonobviousness;

16        (8)    independent invention of the claimed invention by others before or at about the same

17    time as the named inventor thought of it; and

18        (9)    other evidence tending to show obviousness.

19    The presence of any of factors 1-7  may be considered by you as an indication that the

20    claimed invention would not have been obvious at the time the claimed invention was made, and the

21    presence of factors 8-9 may be considered by you as an indication that the claimed invention would

22    have been obvious at such time.  Although you should consider any evidence of these factors, the

23    relevance and importance of any of them to your decision on whether the claimed invention would

24    have been obvious is up to you.

25

26

27

28

United States District Court
For the Northern District of California

33

**JURY INSTRUCTION NO. 29**

**SCOPE AND CONTENT OF PRIOR ART**

Under the patent laws, that which came before an invention is "prior art." Daewoo is relying on various items of prior art. Daewoo and Funai agree that the following items are prior art, and there is no dispute that these items came before the inventions claimed in the '210, and '538 patents. Prior art for the '210 patent includes:

• Japanese patent H5-191958.

• Korean patent U0129547.

• Japanese Laid-open Patent Publication H5-21342.

• PWM control

Prior art for the '538 patent includes:

• U.S. Patent No. 4,012,701 (Hartley oscillators)

• Japanese Patent Publication S61-153102 (Colpitts oscillators)

**JURY INSTRUCTION NO. 30**

**DIFFERENCES OVER THE PRIOR ART**

  In reaching your conclusion as to whether or not the asserted claims of the '210 patent or of the '538 patent would have been obvious at the time the claimed invention was made, you should consider any difference or differences between the prior art and the claimed requirements.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 31**

**LEVEL OF ORDINARY SKILL**

Several times in my instructions I have referred to a person of ordinary skill in the field in which the particular alleged invention was made.

The parties agree that the level of ordinary skill in the field was:

- for the '018 patent, a person with a bachelor of science degree in mechanical engineering or equivalent education and at least about one year of experience in the design of mechanisms in electro-mechanical systems;

- for the '210 patent, a person with a bachelor's degree in an engineering discipline such as mechanical, electrical or materials engineering and at least about one year of experience with electro-mechanical systems or components for such systems;

- for the '538 patent, a person having (1) a bachelor's degree in electrical engineering and at least 3 years of experience in the field of circuit design for audio/visual equipment, or (2) a bachelor's degree in a related field and at least 5 years of experience in the field of circuit design for audio/visual equipment.

**JURY INSTRUCTION 32**

**DAMAGES – BURDEN OF PROOF**

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Daewoo infringed any valid claim of the '018, '210, or '538 patents, you must then determine the amount of money damages to be awarded to Funai to compensate it for the infringement.

The amount of those damages must be adequate to compensate Funai for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Funai has the burden to persuade you of the amount of its damages.  You should award only those damages that Funai more likely than not suffered.  While Funai is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Funai is not entitled to damages that are remote or speculative.

**JURY INSTRUCTION 33**

**LOST PROFITS – GENERALLY**

In this case, Funai seeks to recover lost profits for some of Daewoo's sales of accused products, and a reasonable royalty on the rest of Daewoo's sales.

To recover lost profits for infringing sales, Funai must show that but for the infringement there is a reasonable probability that it would have made sales that Daewoo made of the infringing product. Funai must show the share of Daewoo's sales that it would have made if the infringing product had not been on the market.

You must allocate the lost profits based upon the customer demand for the patented feature of the infringing product. That is, you must determine which profits derive from the patented invention that Daewoo sells, and not from other features of the infringing product. However, if you conclude that the patented feature is the basis for customer demand for the sale of the accused product, then you may award lost profits based on the sale of the entire product.

**JURY INSTRUCTION NO. 34**

**LOST PROFITS – FACTORS TO CONSIDER**

Funai is entitled to lost profits if it proves all of the following:

(1)     that there was a demand for the patented product;

(2)     that there were no non-infringing substitutes, or, if there were, the number of the sales made by Daewoo that Funai would have made despite the availability of other acceptable non-infringing substitutes.  An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period.  Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available.  Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Daewoo had to design or invent around the patented technology to develop an alleged substitute;

(3)     that Funai had the manufacturing and marketing capacity to make any infringing sales actually made by the infringer and for which Funai seeks an award of lost profits; and

(4)     the amount of profit that Funai would have made if Daewoo had not infringed.

**JURY INSTRUCTION NO. 35**

**LOST PROFITS – MARKET SHARE**

One way Funai may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products.  You may award Funai a share of profits equal to that market share.

In deciding Funai's market share, you must decide which products are in Funai's market.  Products are in the same market if they are sufficiently similar to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 36**

**LOST PROFITS WHERE THE PATENTEE DOES NOT PRACTICE THE INVENTION**

Funai may seek lost profits for lost sales of its products even if Funai does not use a claimed invention in a product on which Funai has lost sales.  In this case, since April 2003, Funai has not used the invention in the '210 patent in its products.  To recover lost profits under these circumstances, Funai must prove by a preponderance of the evidence that its product directly competes with Daewoo's accused products and that Funai's lost sales were caused in fact by the infringement of a valid claim of the '210 patent.

**JURY INSTRUCTION NO. 37**

**REASONABLE ROYALTY – ENTITLEMENT**

If Funai has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Funai should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 38**

**REASONABLE ROYALTY – DEFINITION**

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In this trial, you have heard evidence of things that happened after the infringing sales first began.  That evidence can be considered only to the extent that it reflects what the expectations of the patent holder and infringer would have been had they entered into an agreement at the time when the infringing sales first began.  You may not limit or increase the royalty based on the actual profits Daewoo made.

United States District Court

For the Northern District of California

43

**JURY INSTRUCTION NO. 39**

**COMMENCEMENT OF DAMAGES**

You should begin to calculate damages for the '538 patent as of April 3, 2003.  You should begin to calculate damages for the '210 and '018 patents as of October 25, 2002, or the date that Funai first gave notice to each defendant of its claim of patent infringement, whichever is later.  The date of notice of infringement of the '210 and '018 patents is in dispute here, and it is up to you to determine the date on which Funai communicated to each Daewoo defendant a specific charge of infringement.

Notice is not required if Funai did not practice an invention after the date of issuance of the patent.  If you find that Funai did not practice the invention of the '210 patent after issuance of that patent, you should begin calculating damages for that patent as of October 25, 2002.  If you find that Funai did practice the invention of the '210 patent after the date of issuance of that patent, you shall begin to calculate damages as of the date on which effective notice was given.

**JURY INSTRUCTION NO. 40**

**NOTICE**

Funai can give notice of infringement of the '018 and '210 patents in two ways.  The first way is to give notice to the public in general.  Funai can do this by placing the word "patent" or the abbreviation "PAT" with the number of the patent on substantially all the products it sold, either itself or by licensees, that included the patented invention.  This type of notice is effective from the date Funai began to mark substantially all of their products that use the patented invention with the patent number.  If Funai did not mark substantially all of their products that use the patented invention with the patent number, then Funai did not provide notice in this way.

A second way Funai can provide notice of its patents is to communicate to Daewoo a specific charge that the accused product infringed the '018 and '210 patents.  This actual notice is effective from the time it is given.

In any event, the date Funai first gave notice of infringement of the '018 and '210 patents can be no later than May 7, 2004, the filing date of the lawsuit.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 41**

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**JURY INSTRUCTION NO. 42**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**United States District Court**
For the Northern District of California

47

**JURY INSTRUCTION NO. 43**

**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**GLOSSARY OF PATENT TERMS**

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

Abstract:  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

Amendment:  A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

Anticipation:  A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

Assignment:  A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Best Mode: The best way the inventor actually knew to make or use the invention at the time of the patent application.  If the applicant had a best mode as of the time the application was first filed, it must be set forth in the patent specification.

Claim:  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

Conception: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

United States District Court

For the Northern District of California

1    Continuation Application:  A patent application filed during the examination process of an

2    earlier application which has the same disclosure as the original application and does not include

3    anything which would constitute new matter if inserted in the original application.

4    Continuation-In-Part (C-I-P) Application:  A patent application filed during the application process

5    of an earlier application which repeats some or all of the earlier application and adds matter not

6    disclosed in the earlier application to support the addition of new patent claims.

7    Drawings: The drawings are visual representations of the claimed invention contained in a patent

8    application and issued patent, and usually include several figures illustrating various aspects of the

9    claimed invention.

10    Elements:  The required parts of a device or the required steps of a method.  A device or

11    method infringes a patent if it contains each and every requirement of a patent claim.

12    Embodiment:  A product or method that contains the claimed invention.

13    Enablement:  A description of the invention that is sufficient to enable persons skilled in the

14    field of the invention to make and use the invention. The specification of the patent must contain

15    such an enabling description.

16    Examination:  Procedure before the U.S. Patent and Trademark Office whereby a Patent

17    Examiner reviews the filed patent application to determine if the claimed invention is patentable.

18    Filing Date:  Date a patent application, with all the required sections, has been submitted to

19    the U.S. Patent and Trademark Office.

20    Infringement:  Violation of a patent occurring when someone makes, uses or sells a patented

21    invention, without permission of the patent holder, within the United States during the term of the

22    patent.  Infringement may be direct, by inducement, or contributory.  Direct infringement is making,

23    using or selling the patented invention without permission.  Inducing infringement is intentionally

24    causing another to directly infringe a patent.  Contributory infringement is offering to sell or selling

25    an item that is a significant part of the invention, so that the buyer directly infringes the patent.  To

26    be a contributory infringer one must know that the part being offered or sold is designed specifically

27    for infringing the patented invention and is not a common object suitable for non-infringing uses.

28

1    Limitation:  A required part of an invention set forth in a patent claim.  A limitation is a

2  requirement of the invention.  The word "limitation" is often used interchangeably with the word

3  "requirement."

4    Nonobviousness:  One of the requirements for securing a patent. To be valid, the subject

5  matter of the invention must not have been obvious to a person of ordinary skill in the field of the

6  invention at the time of the earlier of the filing date of the patent application or the date of invention.

7  Office Action:  A written communication from the Patent Examiner to the patent applicant in the

8  course of the application examination process.

9    Patent:  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an

10 inventor to prevent others from making, using or selling an invention for a term of 20 years from the

11 date the patent application was filed (or 17 years from the date the patent issued).  When the patent

12 expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three

13 parts, which are a specification, drawings and claims.  The patent is granted after examination by the

14 U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts,

15 and this examination is called the prosecution history.

16    Patent and Trademark Office (PTO):  An administrative branch of the U.S. Department of

17 Commerce that is charged with overseeing and implementing the federal laws of patents and

18 trademarks.  It is responsible for examining all patent applications and issuing all patents in the

19 United States.

20    Prior Art:  Previously known subject matter in the field of a claimed invention for which a

21 patent is being sought.  It includes issued patents, publications, and knowledge deemed to be

22 publicly available such as trade skills, trade practices and the like.

23    Prosecution History:  The prosecution history is the complete written record of the

24 proceedings in the PTO from the initial application to the issued patent.  The prosecution history

25 includes the office actions taken by the PTO and the amendments to the patent application filed by

26 the applicant during the examination process.

27    Reads On:  A patent claim "reads on" a device or method when each required part

28 (requirement) of the claim is found in the device or method.

51

1         Reduction to Practice:  The invention is "reduced to practice" when it is sufficiently

2   developed to show that it would work for its intended purpose.

3         Requirement:  A required part or step of an invention set forth in a patent claim. The word

4   "requirement" is often used interchangeably with the word "limitation."

5         Royalty:  A royalty is a payment made to the owner of a patent by a non-owner in exchange

6   for rights to make, use or sell the claimed invention.

7         Specification:  The specification is a required part of a patent application and an issued

8   patent.  It is a written description of the invention and of the manner and process of making and

9   using the claimed invention.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California